# EXHIBIT 1

# Contracting Officer's Final Decision

Case 2:07-cv-00295-PM-APW Document 26 Filed 05/../2007 Page 2 of 6

U.S. Department of Homeland Security
500 C Street SW
Washington, DC 20472

FEMA

December 14, 2006

Mr. John P. McConnaughhay
President
Grand Acadian, Inc
3584 Sierra Circle
Sulphur, LA 70665

Subject: Contracting Officer's Final Decision of Claims Submitted by Grand Acadian Inc. under GSA Lease Number GS-07B-16028

Dear Mr. McConnaughhay:

This decision is in response to a claim you submitted pursuant to Federal Acquisition Regulation (FAR) Clause 52.233-1 – Disputes and the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613) in the amount of $20,789,383. Your claim consists of an initial claim for $5,749,383 plus interest, dated July 5, 2006, and a supplemental claim for $15,040,000, dated September 28, 2006, seeking compensation for alleged damages to property and claimed entitlement to the value of the Federal Emergency Management Agency's (FEMA) proposed infrastructure improvements relating to approximately 30-acres of property leased by FEMA through the General Services Administration (GSA), Lease No. GS-07B-16028.

**A. Background:**

Mr. John P. McConnaughhay, President of Grand Acadian, Inc., submitted a certified claim dated July 5, 2006 in the amount of $5,749,383.00 plus interest. His claim demanded immediate payment for the remaining lease period from July through November 2006, plus six days in December 2006 totaling $109,258.13. The claim included a letter to the property owner from Lancon Engineers, Inc. which provided a conceptual cost estimate for work based on the landowner's previous discussions with Mr. John Lowery, Project Engineer. The statement of work that the conceptual estimate was based upon was not included with the claim. Attachments to Lancon Engineers letter were a listing of various construction tasks and engineering services totaling $5,749,383.00. The claim required the replacement of the upper 4 feet of topsoil with other compacted material, dewatering, and hydro-seeding of the property. The cost estimate included 150 trees, topographical and property survey, services of a resident project representative, and engineering fees The claim failed to specify justification or provide supporting data documenting the reasonableness or rationale for the claim or the costs.



EXHIBIT
F

On September 28, 2006, Mr. McConnaughhay submitted a certified supplemental claim for the following amounts: $12,000,000 for loss of improvements to land, $570,000 for loss of revenue, $1,120,000.00 increased construction cost, $350,000.00 increased cost of borrowing and $1,000,000.00 for damages caused by FEMA's contractor, Fluor, since filing the July 5, 2006 claim. The supplemental claim alleged the amount due was because Grand Acadian through its principal, Mr McConnaughhay, signed the property lease with GSA dated December 7, 2005, in part, as a result of inducements that between $10 Million to $12 Million of improvements would be built on the leased property. In addition, Mr. McConnaughhay certified that GSA representative Mr. Garhett Gordon specifically in a meeting on or about October 22, 2005 in Lake Charles, LA proposed a very low lease price since Grand Acadian would ultimately receive the proposed property improvements.

**B. Findings:**

1. The following are my findings regarding elements of your July 5, 2006 claim:

a. $5,050,403 - Undercut North/South; East/West Ditch, Backfill with Compacted Material; Remove Upper 4' of Contaminated/Mixed Material and Backfill with Compacted Material; Hydroseed; Dewatering Crew; and Project Contingency.

Photographs and eyewitness accounts indicate significant construction activity had taken place on the property prior to the Government lease. Numerous trees were noted as uprooted and heavy excavation equipment had been on the property prior to the Government lease. Large amounts of woody debris, tree roots, and stumps remained in the soil and the property had been heavily impacted by construction activities prior to the Government's lease.

Inquiry letters were sent to you in an attempted to determine the extent of construction activity on the site prior to and after Hurricane Rita. Your replies were vague concerning the extent of clearing and construction work performed to the property prior to the FEMA lease Based on the evidence presented I am unable to determine that any of the alleged damages to your property were the result of FEMA's use and possession of the property.

b $150,000 - Tree Damages Claim.

Your claim includes a request for reimbursement for 150 trees at $1,000 each. In your counteroffer dated September 19, 2006, you state you had authorized removal of the trees and that you did not count the trees This is further corroborated in Mr. Riggs's letter dated November 1, 2006 indicating that no count of trees was done after Hurricane Rita. Aerial photos appear to show that the majority of the trees you indicated remained on the property after your clearing operations were blown down, severely damaged or uprooted. The majority of tree damages for which you claim reimbursement appear to have been harvested or destroyed as a result of the Hurricane. Of the trees that did remain at the start of the lease, you authorized the Government's contractor to remove.

Contracting Officer's Final Decision of Claims Submitted by Grand Acadian Inc. under GSA Lease Number GS-07B-16028

c. $548,980 - Topographic, Property Survey; Resident Project Representative, Engineering Fees.

The claimed amounts are unsupported Since this cost was not justified, I can only assume these are your proposed Engineering fees to develop your property into a Recreational Vehicle Park. The Government is not responsible to compensate you for your property development.

2. The following are my findings regarding elements of your September 28, 2006 claim:

a. $12,000,000 - Loss of Improvements to Land.

Your supplemental claim includes a claim for $12,000,000 for loss of improvements which seems to be based on a meeting you and others in your corporation had with Mr. Garhett Gordon on or about October 22, 2005. Mr. Gordon is a Reality Specialist with GSA and not the Contracting Officer to the lease agreement. The GSA Lease, No. GS-07B-16028 also contains the terms and conditions relating to this lease. In particular Paragraph 8, Clause 552.270-27 Integrated Agreement reads as follows:

***The lease, upon execution, contains the entire agreement of the parties and no Prior written or oral agreement, express or implied, shall be admissible to contradict the provisions of the Lease.***

I have reviewed the documentation of the Contracting Officer, Mr. David Waishes, concerning his accounting of the lease agreement. Nothing in the supporting record indicates that infrastructure improvements or any other terms or conditions were a consideration in the lease negotiations.

Your supplemental claim indicated you received a very low lease payment when in fact you received a premium lease payment in excess of the Fair Market Rent Estimate for the property. Additionally, the lease price as documented in the Contracting Officer's Price Negotiation Memorandum indicates you received significantly more than the fair lease value of your property.

b. $2,040,000 - Claims Associated with Loss of Revenue, Increased Construction Cost, and Increased Cost of Borrowing.

Your supplemental claim also includes a claim for $570,000 for loss revenue; $1,120,000 in increased construction costs, $350,000 in increased borrowing costs related to your plans for future property development. It is well documented that you had been working on this parcel and the adjoining 30-acre tract since July 2005, which included using heavy equipment for tree harvesting, stump removal,

general clearing and cleanup. I believe there is no correlation when you attempt to compare your half of the property you have been working since July 2005 to the property leased by FEMA. You have performed extensive amounts of work in developing the eastern portion of the property. For example, the documentation submitted with your October 11, 2006 letter indicates you had root raked the entire site to remove debris. You also removed top soil, excavated to obtain clay for the roads, removed stumps, added lime to the soil, and excavated numerous retention ponds. On the FEMA-leased portion of the property the Government instructed the contractor to stop work on further development of the property due to the report of soil conditions. Based on soil tests conducted in January 2006, development of the property into a mobile home park was not economically viable due to the poor, silty soil conditions that required complete removal and replacement with compacted clay which FEMA determined was not feasible.

The basic condition of the existing soils has not changed since the Government entered the property.

c. $1,000,000 - <u>Property Damage Claim</u>.

Paragraph 6 of the Lease Rider requires the Government repair any alterations, and restore the premises to the condition existing at the lease commencement date, normal wear excepted. The Government believes the property is currently in the same or better condition existing at the lease commencement date, normal wear excepted as required by the terms of the contract. You allege the Government damaged your property, but have failed to provide conclusive documentary evidence showing the Government was responsible for the alleged damage. You also have failed to provide adequate evidence supporting the costs associated with your claims for the alleged damages.

You have failed to prove that the Government did not return your property to the condition existing at the lease commencement date, normal wear excepted. Documentation and photographs of individuals who were involved in the initial work on the property indicate the property had already been significantly impacted by your prior construction activity. Contrary to your contention, the inspection reports and photographs taken by the U.S. Army Corps of Engineers (USACE) in January 2006 show that Flour did, in fact, construct drainage ditches and a retention pond as required.

**C. Decision:**

Based on the above, I am denying your entire basic claim dated July 5, 2006 in the amount of $5,749,383 and your supplemental claim dated September 28, 2006 in the amount of $15,040,000 You have failed to provide evidence that your property has been damaged solely as a result of the Government, its contractors or subcontractors. There is substantial evidence to support that your property was heavily impacted by your previous construction activity prior to the start of the lease.

Contracting Officer's Final Decision of Claims Submitted by Grand Acadian Inc. under GSA Lease Number GS-07B-16028

I believe the Government has restored your property to the condition required by the terms of its contract. You have been provided premium lease compensation by the Government in exchange for the use of your property. Therefore, I have determined that the Government has not breached its obligation to restore your property to the condition existing at the lease commencement date, normal wear excepted, as required under the contract, and you were fairly compensated under this contract.

This is the final decision of the Contracting Officer You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U S.C.603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Gerald M. Rottinghaus
Contracting Officer
Federal Emergency Management Agency
Department of Homeland Security

cc/GSA