IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| GRAND ACADIAN, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 07-849C<br>(Judge Hewitt) |

DEFENDANT'S PARTIAL MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss, in part, the amended complaint filed by plaintiff, Grand Acadian, Inc. ("Grand Acadian"), for failure to state a claim upon which relief may be granted. In support of this motion, we rely upon the following brief and the terms of the governing contract.

BRIEF

STATEMENT OF THE ISSUE

Does the $252,000 property lease between Grand Acadian and the Government require the Government to construct a $12 million RV park upon the property?

STATEMENT OF THE CASE

Grand Acadian is the owner of 60 acres of land located in Sulphur, Louisiana. Am. Compl. ¶¶ 5, 33. After Hurricanes Katrina and Rita caused damage in the region, the United States, acting through the Federal Emergency Management Agency ("FEMA"), entered into a contract to lease 30 acres of Grand Acadian's land ("the property") for a term of up to 36 months (the "contract"). Am. Compl. ¶¶ 14, 18, 45. The contract – which includes a Lease, Rider, and

General Clauses – is attached hereto as Exhibit A.[1] Ex. A, Lease § 6 (incorporating Rider and General Clauses as part of the Lease). FEMA entered into a separate contract with Fluor to develop the property. Am. Compl. ¶ 44.

The Lease for use of Grand Acadian's property began to run on December 7, 2005. Ex. A, Lease § 2. The Lease was subject to termination by the Government at any time after 12 months upon 30 days notice. Ex. A, Lease §§ 2, 4. The Lease provided that the property is "to be used for such purposes as determined by [FEMA] and for those additional purposes by those agencies and entities [i.e. government agencies, contractors and related personnel] described in the attached Rider." Ex. A, Lease § 1. In the Rider, Grand Acadian agreed that the property "shall be for construction and establishment of temporary housing facilities for disaster assistance recipients and the construction of improvements (including, but not limited to utilities, roads or driveways, and trailer pads) as the Government determines necessary and/or expedient in connection with the establishment and operation of temporary housing facilities." Ex. A, Rider § 2. In return, the Government agreed that "[a]ny physical additions or improvements to the [property] made by the Government will become the property of [Grand Acadian]." Ex. A, Rider § 6. Grand Acadian reserved the right, however, to "require that the Government, at the end of the Term and at the Government's expense, repair any alterations and restore the premises to the condition existing at the lease commencement date, normal wear excepted." Id.

---

[1] Grand Acadian did not attach the contract to the Amended Complaint. See RCFC 9(h)(3). The contract is "integral" to Grand Acadian's suit for breach and, therefore, is part of the pleadings for purposes of this RCFC 12(b)(6) motion to dismiss. See, e.g., Chambers v. Time Warner, Inc., 282 F.3d 147, 153 & n.3 (2d Cir. 2002) (contracts are "integral" to claims for breach and may be considered upon a FRCP 12(b)(6) motion to dismiss) (collecting cases from ten other "sister circuits" that are in accord); Kawa v. United States, 77 Fed. Cl. 294, 307 (2007) (when ruling upon RCFC 12(b)(6) motion to dismiss, "the Court 'is not limited to the four corners of the complaint' and may also consider 'matters incorporated by reference or integral to the claim … without converting the motion into one for summary judgment.'") (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)).

The Lease also incorporated GSA Form 3517D, which sets forth the standard contract provisions for leases in response to Hurricane Katrina. Ex. A, Lease § 6 & General Clauses. One of those contract clauses, entitled "INTEGRATED AGREEMENT," provides:

> This Lease, upon execution, contains the entire agreement of the parties and no prior written or oral agreement, express or implied, shall be admissible to contradict the provisions of the Lease.

Ex. A, General Clause § 6; see also 48 C.F.R. § 552.270-27.

The amended complaint describes various oral and written communications during the Lease negotiations. Am. Compl. ¶¶ 19-43. Before the Lease was signed, Grand Acadian requested and received a copy of Fluor's work plans for development of the property. Am. Compl. ¶¶ 36-40. Fluor allegedly represented to Grand Acadian "that the planned infrastructure improvements were valued at ten to twelve million dollars ($10,000,000.00 to $12,000,000.00) and were to remain on the property at the expiration of the lease." Am. Compl. ¶ 41.

Fluor construction crews and subcontractors first entered the property on or about January 6, 2006. Am. Compl. ¶ 49. Fluor allegedly failed to perform its work as specified in its contract with the Government and caused damage to the property. Am. Compl. §§ 50-60. FEMA issued a stop work order on January 30, 2006. Am. Compl. ¶ 60. FEMA subsequently put the project on hold due to concerns about increased costs associated with soil conditions and issued a final stop work order on February 11, 2006. Am. Compl. ¶¶ 62, 65. The Government exercised its right to terminate the Lease effective December 6, 2006. Am. Compl. ¶¶ 71, 167.

Relying upon the restoration clause, Grand Acadian sought damages from the Government for the cost of restoring the property to its pre-lease conditions. Am. Compl. ¶¶ 74, 110. Extensive discussions followed between Grand Acadian and the Government concerning the nature and extent of potential restoration work and included efforts to resolve this dispute. Am. Compl. ¶¶ 72-166. Grand Acadian submitted a claim on July 5, 2006, requesting damages

of $5.7 million for costs associated with repair and restoration of the property. Am. Compl. ¶ 110. Grand Acadian submitted a $14 million supplemental claim on September 29, 2006, claiming damages for loss of improvements, loss of revenue, increased construction costs, and increased borrowing costs to develop the property. Am. Compl. ¶ 138; see also Compl. Ex. 72 (supplemental claim). The contracting officer issued a final decision denying Grand Acadian's claims on December 14, 2006. Am. Compl. ¶ 170 & Ex. 1.

Grand Acadian filed a three count complaint on November 30, 2007, asserting claims for breach of the implied covenant of good faith and fair dealing (Count I), maladministration (Count II), and bad faith (Count III). Compl. ¶¶ 172-75. The complaint sought damages of $6 million for damage to the property and $14 million for loss of infrastructure, loss of revenue, increased construction costs, and increased borrowing costs associated with the development of the property. Compl. ¶¶ 177-79.

On January 25, 2008, Grand Acadian filed an Amended Complaint asserting a $6.0 million claim for breach of the restoration clause (the "Restoration" claim"). Am. Compl. ¶¶ 171-72; see also Ex. A, Rider § 6 (restoration clause). The amended complaint also asserts a $14 million contract claim related to the Government's "promise" to develop infrastructure on the property (the "Infrastructure" claim). Am. Compl. ¶¶ 172, 175-76, 178 & Ex. 1. As part of the Infrastructure claim, Grand Acadian alleges that the Government failed to build, or failed to have Fluor build, the "promised 12 million dollar RV park." Id. Grand Acadian further alleges that it has lost $570,000 in revenues associated with the RV park that was not built, and that it will cost $1.47 million more to build and finance the RV park today as compared to when the Lease was signed. Id. There is no allegation in the original complaint or the amended complaint, however,

that the Government failed to pay Grand Acadian one year's worth of rent, which totaled approximately $252,000. See Am. Compl. ¶ 43; Ex. A, Lease § 3.

The Restoration and Infrastructure claims are both included within a single count for breach of contract. Am. Compl. ¶¶ 171-76. Only the Infrastructure claim, however, is the subject of this motion to dismiss.

ARGUMENT

I. THE INFRASTRUCTURE CLAIM FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT AND SHOULD BE DISMISSED PURSUANT TO RCFC 12(B)(6)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (citations omitted, interpreting Fed. R. Civ. P. 12(b)(6)); accord Griffin Broadband Communs., Inc. v. United States, 79 Fed. Cl. 320, 323 (2007) (following Twombly upon RCFC 12(b)(6) motion), appeal pending (Jan. 14, 2008).[2] "Legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." Figueroa v. United States, 57 Fed. Cl. 488, 497 (2003) (citing Blaze Constr., Inc. v. United States, 27 Fed. Cl. 646, 650 (1993) (quoting 2A James Wm. Moore & Jo Desha Lucas, Moore's Federal Practice, ¶ 12.07[2.-5] (2d ed. 1992))), aff'd, 466 F.3d 1023 (Fed. Cir. 2006).

[2] In the past, the Court followed Conley v. Gibson, 355 U.S. 41, 45, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), which for 50 years stood for the proposition that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." E.g., Russell v. United States, 78 Fed. Cl. 281, 285 (2007) (Hewitt, J.) (quoting Conley). The United States Supreme Court recently held that "this famous observation [in Conley] has earned its retirement" and "is best forgotten as an incomplete, negative gloss on an accepted pleading standard." Bell Atlantic, 127 S. Ct. 1955, 1969; accord Griffin Broadband Communs., Inc. v. United States, 79 Fed. Cl. 320, 323 (2007) (noting that Bell Atlantic abrogated Conley formulation of standard).

"In order to recover for a breach of contract [Grand Acadian] must establish: '(1) a valid [lease] between the parties, (2) an obligation or duty arising out of the [lease], (3) a breach of that duty, and (4) damages caused by the breach.'" See Frazier v. United States, 67 Fed. Cl. 56, 60 (2005) (quoting San Carlos Irrigation & Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989)), aff'd without op., 186 Fed. Appx. 990 (Fed. Cir. 2006). Indeed, "for a claim to arise under a contract, it must rely upon a clause that authorizes a specific remedy." Brighton Village Assocs. v. United States, 52 F.3d 1056, 1060 (Fed. Cir. 1995).

Contract interpretation is a question of law that is appropriate for adjudication upon a motion to dismiss. E.g., Ragard v. United States, 439 F.3d 1378, 1380 (Fed. Cir. 2006); Int'l Transducer Corp. v. United States, 30 Fed. Cl. 522 (1994), aff'd without op., 48 F.3d 1235 (Fed. Cir. 1995); Flathead Joint Bd. of Control v. United States, 30 Fed. Cl. 287, 294 (1993), aff'd without op., 59 F.3d 180 (Fed. Cir. 1995). When a lease is unambiguous and the property owner alleges that the Government has breached a non-existent duty, the cause of action should be dismissed for failure to state a claim. Frazier, 67 Fed. Cl. at 60 (RCFC 12(b)(6) motion granted).

The Infrastructure claim fails because the contract does not impose upon the Government a duty to build Grand Acadian an RV park worth $10 to $12 million. The Government procured the right to use the property from Grand Acadian at a price of $252,000 per year. The contract granted FEMA the right to use the property at its sole discretion during the Lease term – "for such purposes as determined by the Federal Emergency Management Agency" – subject only to Grand Acadian's right to either: (1) accept "any" physical additions or improvements to the property; or (2) require the Government to "restore" the property to its pre-Lease condition. Ex. A, Lease § 1, Rider §§ 2, 6. If the Government had decided to build improvements upon the property, then Grand Acadian could have taken ownership of "any" such improvements when the

Lease expired. See id. The Government decided to cancel the project and terminate the contract, however, due to concerns about increased costs associated with soil conditions. Am. Compl. ¶¶ 62, 71. Grand Acadian may have hoped that the Government would build improvements upon the property to its liking, but nowhere in the written contract does it create an affirmative contractual obligation for the Government to build Grand Acadian a $10 million RV park, a $12 million RV park, or any RV park at all.

Grand Acadian nevertheless contends that it was induced to sign the contract based upon alleged oral and written communications, such as the Fluor work plan and an oral representation that the "planned infrastructure improvements were valued at ten to twelve million dollars." Am. Compl. ¶¶ 37-43. Even accepting these allegations as true, as we must for purposes of this motion to dismiss, the written contract is an "INTEGRATED AGREEMENT" that "contains the entire agreement of the parties" and stipulates that "no prior written or oral agreement, express or implied, shall be admissible to contradict the provisions of the Lease." Ex. A, General Clause § 6 (capitalization in the original); see also 48 C.F.R. § 552.270-27. The alleged oral and written communications upon which Grand Acadian relies do not appear in the contract. See Ex. A.

"Where, as here, the parties are both commercial entities or the government, integration clauses are given particularly great weight." Rumsfeld v. Freedom N.Y., Inc., 329 F.3d 1320, 1328 (Fed. Cir. 2003); see also Campbell v. United States, 228 Ct. Cl. 661, 661 F.2d 209, 218 (Ct. Cl. 1981) (Where a contract includes an integration clause, "it is a fair bet that the parties agreed to no more than they said."). "An integration clause 'conclusively establishes that the integration is total unless (a) the document is obviously incomplete or (b) the merger clause was included as a result of fraud or mistake or any other reason to set aside the contract.'" Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1375 (Fed. Cir. 2004) (quoting Rumsfeld v.

Freedom N.Y., Inc., 329 F.3d at 1329 (quoting John D. Calamari & Joseph M. Perillo, The Law of Contracts § 3.2(a) (4th ed. 1998))).

Grand Acadian does not allege that the contract is obviously incomplete on its face, such as might be the case when an exhibit to the contract is missing. See Gemini Elecs., Inc. v. United States, 65 Fed. Cl. 55, 63 (2005) (signed agreement with integration clause was "obviously incomplete" when text of the agreement cross referenced an Exhibit A, which specified the locations for performance, but was not attached). Nor does Grand Acadian allege, with the requisite particularity or otherwise, that the integration clause itself was included by fraud or mistake. See RCFC 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").

Grand Acadian cannot impose new and substantial obligations upon the Government that do not appear in the integrated contract; nor can Grand Acadian sue for breach of contractual obligations that do not exist. See Holland v. United States, 74 Fed. Cl. 225, 262-63 (2006) (granting defendant partial summary judgment because integrated agreement was devoid of the promise sought to be enforced by plaintiff); Smelser v. United States, 53 Fed. Cl. 530, 542 (2002) (same, stating that plaintiff "is precluded from attempting to create obligations from alleged representations that were not incorporated into the contract"), aff'd without op., 69 Fed. Appx. 466 (Fed. Cir. 2003). The "entire agreement" that was signed by the parties does not confer upon Grand Acadian either a contractual right to $12 million worth of infrastructure, a contractual right to recover $570,000 for lost revenue associated with the infrastructure that was not built, or a contractual right to recover $1.47 million for the increased costs of building and financing that infrastructure today. See Ex. A. The $14 million Infrastructure claim therefore should be dismissed for failure to state a claim. See Frazier, 67 Fed. Cl. at 60 (granting RCFC

12(b)(6) motion because lease language was unambiguous and did not entitle the property owner to relief sought).

CONCLUSION

For the foregoing reasons, we respectfully request that the Court dismiss Grand Acadian's $14 million Infrastructure claim in the amended complaint for failure to state a claim upon which relief may be granted.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Mark A. Melnick
MARK A. MELNICK
Assistant Director

s/Douglas G. Edelschick
DOUGLAS G. EDELSCHICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. Street, N.W.
Washington, DC 20530
Tel: (202) 353-9303

February 21, 2008

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2008, a copy of foregoing "DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Douglas G. Edelschick