IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| GRAND ACADIAN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 07-849C |
| v. | ) | |
| | ) | (Judge Emily C. Hewitt) |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS**

Comes now the plaintiff, Grand Acadian, Inc., (hereinafter "Grand Acadian") by and through its counsel of record, and makes its response in opposition to the Government's Partial Motion to Dismiss. Grand Acadian asserts that no portion of its Complaint is properly subject to a dismissal pursuant to Rule 12(b)(6) of the *Rules of the United States Court of Federal Claims*, as said Complaint states only valid claims upon which relief can be granted. In support of its position, Grand Acadian would show unto the Court as follows:

## Statement of the Issues

I. DOES THE LEASE BETWEEN GRAND ACADIAN AND THE GOVERNMENT ESTABLISH A DUTY UPON THE GOVERNMENT TO CONSTRUCT AN INFRASTRUCTURE UPON THE LEASED PREMISES?

II. WHAT IS THE EFFECT OF THE LEASE'S INTEGRATION CLAUSE?

III. WHAT EFFECT DOES THE PRESUMPTION OF TRUTH AFFORDED THE ALLEGATIONS OF GRAND ACADIAN'S COMPLAINT HAVE UPON THE GOVERNMENT'S PARTIAL MOTION TO DISMISS?

## Statement of the Case

Grand Acadian filed its Complaint on November 30, 2007, stating claims for (1) breach of the covenant of good faith and fair dealing; (2) maladministration; and (3) bad faith. On

January 25, 2007, Grand Acadian amended its Complaint to state only one claim for breach of contract. Grand Acadian's breach of contract claim, in part, states a claim for damages based upon the Government's failure to comply with its contractual obligation to construct an infrastructure upon the leased premises. On February 21, 2008, the Government filed a Partial Motion to Dismiss, seeking to dismiss a portion of Grand Acadian's breach of contract claim. In its Partial Motion to Dismiss, the Government seeks a dismissal of only that portion of Grand Acadian's breach of contract claim relative to the Government's alleged failure to construct an infrastructure upon the leased premises. (Def. Mot. p. 5)

**Statement of the Facts**

Grand Acadian's claim for breach of contract is factually based upon Lease Number GS-07B-16028 (hereinafter the "Lease") between it and the Federal Emergency Management Agency (FEMA). (See Exhibit A – Lease, attached hereto) The Lease, or "contract" as it is referred to by the Government, includes not only the specific document entitled "U.S. Government Lease for Real Property," but also the exhibits thereto. Id. The Lease states that Grand Acadian's property is "to be used for such purposes as determined by the Federal Emergency Management Agency ("FEMA"), and for those additional purposes by those agencies and entities described in the attached Rider." (Exhibit A, pg. 1, par. 1) The Lease also states that, "the following are attached and made a part hereof: (a) Lease Rider consisting of paragraphs 1 through 11, (b) GSA 3517D – General Clauses; (c) GSA 3518 – Representations and Certifications; and (d) Exhibit 'A' (Site Plan)." (Exhibit A, pg. 2, par. 6) Despite its criticism of Grand Acadian's choice not to attach a copy of the Lease to its Complaint, the Government has included only attachments (a) and (b) to the Lease, and has failed to include attachment (c) and attachment (d), which unequivocally depicts the site plan for the leased

premises complete with infrastructure. (Def. Mot. Ex. A) The Lease which forms the basis of Grand Acadian's claim for breach of contract includes all five (5) of these documents. (Exhibit A)

The Lease Rider provides that the premises are to be used to provide relief to the victims of Hurricane Rita through the establishment of temporary housing. (Exhibit A, pg. 3, par. 2) The Lease Rider goes on to state that the, "use of the Property shall be for the construction and establishment of temporary housing facilities for disaster assistance recipients and the construction of improvements (including but not limited to utilities, roads or driveways, and trailer pads) as the government determines necessary and/or expedient in connection with the establishment and operation of temporary housing facilities." Id.

Further, paragraph 3 of the Lease Rider states that, "the parties acknowledge that the Government's use of the Property shall require construction and placement of improvements on the Property to permit residential occupancy thereon," and "shall also require the installation of sewer, water, electrical utilities, and such other amenities as may be necessary and/or convenient to establish and operate temporary housing facilities." (Exhibit A, pg. 2, par. 3)

The Lease Rider also provides that any additions to or improvements upon the leased property, made by the Government, will become the property of Grand Acadian at the end of the Lease term. (Exhibit A, pg. 2, par. 6)

**Standard of Review for Rule 12(b)(6) Motion to Dismiss**

When considering the Government's Partial Motion to Dismiss, pursuant to Rule 12(b)(6) of the *Rules of the United State Court of Federal Claims*, the Court must assume that all well-pled, factual allegations are true, and draw all reasonable inferences in Grand Acadian's favor. Brubaker Amusement Co., Inc. v. United States, 304 F. 3d 1349, 1355 (Fed.Cir.2002).

**Argument**

The necessary elements of a claim for breach of contract are (1) a valid contract; (2) a contractual duty or obligation; (3) a breach of that duty; and (4) damages caused by the breach. (Def. Mot. p. 6) In its First Amended Complaint, Grand Acadian has alleged the existence of each of these four (4) elements. (1st Am. Compl. paragraph 43, 44, 45, 65, 172, 175, 176, and 178) Thus, it is clear that Grand Acadian has stated a claim. However, the Government's Partial Motion to Dismiss asserts that Grand Acadian has stated a claim upon which a portion of the relief requested can not be granted.

In support of its motion, the Government asserts that Grand Acadian's infrastructure claim is not one upon which relief can be granted because of the absence of a contractual duty or obligation upon the Government to construct an infrastructure upon the leased premises. This is an attack upon the viability of the second element of Grand Acadian's breach of contract claim. Otherwise, the Government argues that the factual allegations made by Grand Acadian in its First Amended Complaint with regard to the construction of a twelve million dollar infrastructure are not to be accepted as true because they are inadmissible due to the integrated nature of the contract.

The Government's assertions regarding the requirements of the Lease are misleading. The Lease clearly provides that the Government will construct an infrastructure upon the leased premises. Further, the Government's position regarding the absence of contractual duty is not sufficient to overcome the procedural deference given to Grand Acadian as the non-movant under Rule 12. Otherwise, the Government's objection to Grand Acadian's reference to its pre-Lease negotiations is without merit, as the allegations concerning the value of the infrastructure

to be built upon the leased premises go directly to the amount, not the propriety, of the damages claimed by Grand Acadian, and are not a proper subject for a Rule 12(b)(6) motion to dismiss.

**I. THE GOVERNMENT HAS A CONTRACTUAL DUTY TO CONSTRUCT AN INFRASTRUCTURE UPON THE LEASED PREMISES.**

The Government has argued that Grand Acadian's infrastructure claim seeks the enforcement of a "non-existent duty," and that the Lease "does not impose upon the Government any duty to build Grand Acadian an RV Park worth $10 to $12 million." (Def. Mot. p. 6) The Government goes on to assert that the choice as to whether or not to build any infrastructure was in its sole discretion. Id. These assertions are plainly false, because the Lease contains express terms which require the Government to construct an infrastructure upon the leased premises.

When ruling upon a Rule 12(b)(6) motion, the Court is not limited to the four corners of the complaint, but may also consider matters incorporated by reference or integral to the claim. Kawa v. United States, 77 Fed. Cl. 294, 307 (2007)(Def. Mot. p. 2) Citing this case as precedent, the Government has argued that the Lease and its attachments are necessary to this Court's analysis of the sufficiency of the Complaint. Id. Grand Acadian agrees.

Paragraph 1 of the Lease states that the leased premises are to be used for, amongst other things, the purposes described in the Lease Rider. (Exhibit A, pg. 1, par. 1) The Lease Rider, which is attachment (a) to the Lease, provides that the premises are to be used for the construction of a temporary housing facility for the benefit of survivors of Hurricane Rita. (Exhibit A, pg. 3, par. 2) According to the same passage, the Government's obligation includes, but is not limited to, the construction of utilities, roads, driveways and trailer pads, as the Government determines necessary for the establishment and operation of said facility. Id. The phrase "as the Government determines necessary" does not alleviate the Government from its duty to construct the temporary housing facility, (i.e. the RV Park infrastructure) it simply grants

deference to the wishes of the Government regarding how the construction is to be accomplished. In other words, by signing the Lease the Government has obligated itself to construct the infrastructure, but has reserved deference as to the exact manner in which to construct said infrastructure. Obviously, this interpretation is opposed to the Government's position, that it was completely free to choose whether or not to build any infrastructure.

Even more definitive of the Government's obligation is paragraph 3 of the Lease Rider. Paragraph 3 contains an express acknowledgement by the Government that its ***"use of the Property SHALL REQUIRE CONSTRUCTION AND PLACEMENT OF IMPROVEMENTS ON THE PROPERTY to permit residential occupancy," and "SHALL ALSO REQUIRE the installation of sewer, water, electrical utilities, and such other amenities as may be necessary and/or convenient to establish and operate temporary housing facilities."*** (Exhibit A, pg. 1-2, par. 3)(emphasis added) Clearly, this language places an affirmative duty upon the Government to construct improvements upon the leased premises. In fact, this language goes so far as to mandate the construction and placement of improvements, utilities, and other amenities as may be necessary or convenient to permit residential occupancy. These "improvements" are precisely the infrastructure to which Grand Acadian refers in its claim for breach of contract. Grand Acadian asserts that this clause is the "silver bullet" that extinguishes the Government's argument that the Lease places no duty upon it to construct infrastructure upon the leased premises.

The Site Plan contains many more express representations by the Government that it will construct an infrastructure upon the leased premises. (Exhibit A, pg. 47-63) The Site Plan, which is attachment (d) to the Lease, clearly shows retention ponds, roads, trailer pads, buildings, landscaping, and other utilities. <u>Id.</u> By including the Site Plan in the Lease, the

Government agreed to build the depicted infrastructure, or at least something similar, upon the leased premises. By failing to construct any infrastructure whatsoever, the Government has completely breached its agreement.

Further, Grand Acadian has alleged that the Site Plan was provided to it prior to the execution of the Lease as an inducement to enter into said agreement. (1st Am. Compl. paragraph 36-44) The Government has argued that these matters are outside of the terms of the Lease, and thus should not be considered by the Court as support for Grand Acadian's claim. Obviously, the Government's position is incorrect, as the Site Plan and all of its representations have explicitly been made a part of the Lease. (Exhibit A, pg. 2, par. 6).

**II. THE LEASE RELIED UPON BY THE GOVERNMENT IS NOT INTEGRATED.**

The Government has argued that the presence of an integration clause establishes the complete integration of the Lease, thus excluding any allegation of the representations made to Grand Acadian prior to its acceptance of the Lease. (Def. Mot. p. 7-8) In support of this position, the Government cites the case of Barron Bancshares, Inc. v. United States, 366 F. 3d 1360, 1375 (Fed. Cir. 2004), for the proposition that the presence of an integration clause conclusively establishes the complete integration of a contract except where, (a) the document is obviously incomplete or (b) where the clause was included as a result of fraud or any other reason to set aside the contract. (Def. Mot. p. 7-8) Grand Acadian asserts that the form of the "Lease" which the Government has used to support its Partial Motion to Dismiss is obviously incomplete.

The version of the Lease which is attached to the Government's Motion suffers from a glaring omission. (Def. Mot. Ex. A) Paragraph 6 of the Lease clearly references four (4) separate attachments. (Exhibit A, pg. 2, par. 6) Only two (2) of these attachments are included in the

Government's truncated version of the Lease. (Def. Mot. Ex. A) This version of the Lease is obviously incomplete, and according to the Government's own authority, complete integration of the Lease cannot be established when there is such an obvious omission.

Grand Acadian asserts that the Government must concede that its version of the Lease is incomplete, and thus not fully integrated. Attachments (c) and (d), and the representations and warranties that are provided therein, are clearly part of the Lease. (Exhibit A, pg. 2, par. 6) Grand Acadian asserts that the Lease, as shown in Exhibit A attached hereto, is a true and complete copy of the agreement between FEMA and Grand Acadian, which makes up the basis of the above-styled action. Grand Acadian represents to the Court that this version of the Lease ***is*** fully integrated, and more than sufficiently supports its claim that it has been damaged by the Government's breach of its agreement to construct an infrastructure upon the leased premises.

Further, the fully integrated Lease includes the Site Plan prepared by Flour and provided to Grand Acadian prior to the execution of the Lease. (Exhibit A, pg. 2, par. 6) This Site Plan embodies the representations made to Grand Acadian regarding the Government's promise to construct an infrastructure upon the leased premises which Grand Acadian would retain after the termination of the Lease. (Exhibit A, pg. 47-63) The Government has objected to Grand Acadian's allegation concerning the representations made to it prior to the Lease that the infrastructure would be worth twelve million dollars. This objection is relative only to the amount of damages claimed by Grand Acadian. The integrated Lease clearly embodies a contractual obligation to construct infrastructure. The value of the promised infrastructure, whether it be twelve million dollars or twelve dollars, is clearly a question of fact to be decided at trial. The Government's objection to the amount of damages alleged by Grand Acadian is not an appropriate basis for a motion to dismiss pursuant to Rule 12(b)(6).

## III. THE GOVERNMENT'S PARTIAL MOTION TO DISMISS MUST BE DENIED BECAUSE THE FACTUAL ALLEGATIONS PRESENTED IN GRAND ACADIAN'S FIRST AMENDED COMPLAINT MUST BE ACCEPTED AS TRUE.

As discussed above, Grand Acadian has alleged that the Government had a contractual duty to construct an infrastructure upon the leased premises. Pursuant to the relevant standard, this allegation must be accepted as true by the Court. Therefore, to the extent that the Government's Partial Motion to Dismiss is based upon the assertion of the non-existence of a contractual duty, it is procedurally defeated because the existence of said duty has been alleged, and thus, has been procedurally established. Furthermore, the existence of said duty is supported by the express language of the Lease. (Exhibit A)

The Government's Partial Motion to Dismiss ignores the procedural establishment of the elements of Grand Acadian's claim, and seeks to test the strength of its evidence by arguing that all such supporting proof is foreclosed by the integration clause. First and foremost, such an evidentiary test is not an appropriate basis for a Rule 12(b)(6) Motion to Dismiss. Second, the integration clause present in the Lease does not prevent or detract from the admissibility or credibility of Grand Acadian's supporting evidence, primarily because this evidence has been incorporated by reference into the Lease itself through the Site Plan. (Exhibit A, pg. 47-63)

Thus, for all of the reasons discussed herein, the Government's Partial Motion to Dismiss is due to be denied.

Respectfully submitted on this the 20th day of March, 2008.

/s/ Howell Roger Riggs________________________
Howell Roger Riggs
Patrick O. Miller
Counsel for the Plaintiff, Grand Acadian, Inc.

OF COUNSEL:

**Dick Riggs Miller LLP**
200 Clinton Avenue West, Suite 1050
Huntsville, Alabama 35801
Telephone (256) 564-7317
Facsimile (256) 564-7319
hriggs@drmslaw.net
pmiller@drmslaw.net

**Certificate of Service**

I, Howell Roger Riggs, do hereby certify that a true and correct copy of the foregoing was lawfully served upon counsel for the Defendant via electronic transmission on this the 20th day of March, 2008.

/s/ Howell Roger Riggs
Howell Roger Riggs
Counsel for the Plaintiff