# In the United States Court of Federal Claims

No. 07-849 C
(E-Filed:  October 6, 2011)

| | |
|---|---|
| GRAND ACADIAN, INC., | ) |
| | ) |
| | ) Pretrial Proceeding; Disposition of |
| Plaintiff, | ) Motions in Limine to Exclude |
| | ) Witnesses and Evidence |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Howell Roger Riggs, Huntsville, AL, for plaintiff.

Douglas G. Edelschick, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Jeffrey D. Klingman, Trial Attorney, and John J. Todor, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  Jean Hardin, Office of Chief Counsel, General Law Division, Federal Emergency Management Agency, Washington, DC, of counsel.

## OPINION

HEWITT, Chief Judge

I.      Background

On April 15, 2011, the court filed a scheduling order that governs the remaining pretrial proceedings in this matter.  See generally Apr. 15, 2011 Order, Docket Number (Dkt. No.) 98; see also Grand Acadian, Inc. v. United States, 97 Fed. Cl. 493, 484-87 (2011) (describing the factual background of this case).  Pursuant to the scheduling order, the parties filed the pretrial disclosures and motions listed below, each of which relates to the evidence that is to be admitted at trial or to the service of subpoenas more than 100 miles from the place of trial.

Before the court are the following pretrial disclosures, each of which was filed on July 29, 2011:  plaintiff's Notice of Filing (Pl.'s Notice), Dkt. No. 114 (containing plaintiff's exhibit list, witness list and deposition designations, as well as the parties' joint exhibit list and the parties' joint certification); Defendant's List of Trial Exhibits, Dkt. No. 115; Defendant's List of Trial Witnesses, Dkt. No. 116; and Defendant's List of Deposition Designations, Dkt. No. 117.

Also before the court are the following uncontested motions, each of which was filed on August 15, 2011:  Defendant's Consent Motion to Introduce Deposition Testimony of Plaintiff's President and Corporate Designee, Dkt. No. 122; Defendant's Consent Motion for Leave to Serve Subpoenas Upon Witnesses Who Reside More than 100 Miles from the Place of Trial, Dkt. No. 123; and Grand's Motion for Leave to Serve Subpoena[s] Upon Witnesses Who Reside More than 100 Miles from the Place of Trial,[1] Dkt. No. 128.  See Joint Status Report Regarding Pre-Trial Conference (first Joint Status Report or JSR I), filed September 28, 2011, Dkt. No. 141, at 1 (stating that these three motions are unopposed).  Additionally, before the court is Defendant's Consent Motion for the Court to Hear Live Trial Testimony of One Witness Out of Time, filed October 4, 2011, Dkt. No. 145.

Before the court for determination are the following objections, contested motions in limine and briefing:  Plaintiff's Objection to Defendant's Deposition Designations and Pre-Trial List of Witnesses and Exhibits[2] (Motion or Pl.'s Mot.),[3] filed August 9, 2011, Dkt. No. 121; Defendant's Motion in Limine to Exclude Evidence Relating to

---

[1]Plaintiff also filed a document titled Grand's Motion for Leave to Serve Subpoena[s] Upon Witnesses Who Reside More than 100 Miles from the Place of Trial, Docket Number (Dkt. No.) 127, which appears to the court to be a duplicate of Grand's Motion for Leave to Serve Subpoena[s] Upon Witnesses Who Reside More than 100 Miles from the Place of Trial, Dkt. No. 128.

[2]Plaintiff previously filed Plaintiff's Objection to Defendant's Deposition Designations and Pre-Trial List of Witnesses and Exhibits, Dkt. No. 118, without the signature of plaintiff's counsel of record.  Aug. 9, 2011 Order, Dkt. No. 120, at 1-2 (directing plaintiff to re-file the motion).

[3]Although plaintiff did not submit its objections in the form of a motion in limine, plaintiff explained the basis of each objection.  See Pl.'s Objection to Def.'s Dep. Designations and Pre-Trial List of Witnesses and Exs., Dkt. No. 121, passim.  The parties then filed briefing that addressed plaintiff's objections as though plaintiff had filed a motion in limine.  See Def.'s Resp. to Pl's Objections to Def.'s Pre-Trial Disclosures (Def.'s Resp.), Dkt. No. 134, passim; Pl.'s Reply in Support of its Objection to Def.'s Dep. Designations and Pre-Trial List of Witnesses and Exs., Dkt. No. 140, passim.  The court therefore treats plaintiff's list of objections as a motion in limine.

Undisclosed Experts (Def.'s Undisclosed Expert Mot.),[4] filed August 15, 2011, Dkt. No. 124; Defendant's Motion in Limine to Exclude Evidence Relating to Freese & Nichols, Inc. Opinions (Def.'s Freese & Nichols Mot.), filed August 15, 2011, Dkt. No. 125; Grand's Motion to Introduce Deposition Testimony of Patricia Hatley (Pl.'s Hatley Mot.),[5] filed August 15, 2011, Dkt. No. 129; Plaintiff-Grand's Response to the USA's Motion to Exclude Witnesses (Pl.'s Undisclosed Expert Resp.), filed September 1, 2011, Dkt. No. 131; Plaintiff's Response in Opposition to Defendant's Motion in Limine to Exclude Evidence Relating to Freese & Nichols, Inc[.] (Pl.'s Freese & Nichols Resp.), filed September 1, 2011, Dkt. No. 132; Defendant's Response in Opposition to Plaintiff's Motion to Introduce Deposition Testimony of Patricia Hatley (Def.'s Hatley Resp.), filed on September 6, 2011, Dkt. No. 133; Defendant's Response to Plaintiff's Objections to Defendant's Pre-Trial Disclosures (Def.'s Resp.), filed September 6, 2011, Dkt. No. 134; Defendant's Reply to Plaintiff's Response to Defendant's Motion in Limine to Exclude Evidence Relating to Undisclosed Experts (Def.'s Undisclosed Expert Reply), filed September 20, 2011, Dkt. No. 137; Defendant's Reply in Support of Motion in Limine to Exclude Evidence Relating to Freese & Nichols, Inc. Opinions (Def.'s Freese & Nichols Reply), filed September 20, 2011, Dkt. No. 138; Plaintiff's Reply to [the] Government's Response in Opposition to Motion in Limine to Introduce the Deposition Testimony of Patricia Hatley (Pl.'s Hatley Reply), filed September 20, 2011, Dkt. No. 139; and Plaintiff's Reply in Support of its Objection to Defendant's Deposition Designations and Pre-Trial List of Witnesses and Exhibits (Pl.'s Reply), filed September 20, 2011, Dkt. No. 140.

After submitting the above filings, the parties "met and conferred concerning all pending motions and objections in an effort to narrow their differences in advance of the pre-trial conference." JSR I, 1. Two joint status reports filed by the parties following the parties' meeting are also before the court. See generally JSR I; Am. Joint Status Report Regarding Pre-Trial Conference (second Joint Status Report or JSR II), filed October 5, 2011, Dkt. No. 147.

The court rules on the parties' motions as follows.

II.    Discussion

A.    Plaintiff's Objections to Defendant's Witnesses

[4]Pursuant to the court's scheduling order, Apr. 15, 2011 Order, Dkt. No. 98, defendant also filed a list of the objections that included the objections that defendant planned to raise in its motions in limine. See Def.'s Objections to Pl.'s Pre-Trial Disclosures, Dkt. No. 119, at 1.

[5]Plaintiff also filed a document titled Grand's Motion to Introduce Deposition Testimony of Patricia Hatley, Dkt. No. 126, which appears to the court to be a duplicate of Grand's Motion to Introduce Deposition Testimony of Patricia Hatley, Dkt. No. 129.

Plaintiff objects to testimony by Mr. John Foti, Mr. Garhett Gordon and Mr. David Waishes on the value of plaintiff's property "on the basis that the value of GA's property is irrelevant to the issues remaining for trial, and therefore inadmissible." Pl.'s Mot. 1-2 (citing Fed. R. Evid. 401-03). Defendant responds that the fair market value of the property is relevant to the government's fraud counterclaims, which "allege that Grand Acadian's $180,000 certified claim for replacement trees is manifestly fraudulent, in part, because of the wide disparity between the value claimed by Grand Acadian for the trees and the fair market value of the entire property." Def.'s Resp. 2 (citations omitted). Defendant further contends that defendant's "expert arborist, Joseph Samnik, is expected to opine at trial that Grand Acadian's tree claim is unreasonable by numerous benchmark measures, including the fair market value of the property as a whole." Id.

In its reply, plaintiff repeats its contention that the testimony of Mr. Foti, Mr. Gordon and Mr. Waishes is irrelevant to the extent that it is offered as evidence of the market value of Grand Acadian's property, Pl.'s Reply 1-3, but withdraws the other grounds of its objection, id. at 4-5 ("[T]he only remaining issue is whether the [c]ourt will permit the [g]overnment to introduce and rely upon evidence of the fair market value of the property. . . . If such evidence is permitted, [Grand Acadian] concedes that its remaining objections are due to be overruled."). Plaintiff further argues that defendant's "true intention" in introducing evidence of property value is "to sneak evidence of the fair market value into the record under the guise of its counterclaim only to be used to challenge the denial of summary judgment" in a future appeal. Id. at 3.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The court ruled in its May 29, 2009 Opinion that, "[w]hile the general rule provides that recovery based on the cost of [restoration] is subject to an absolute ceiling of diminution in fair market value," the general rule does not apply in this case because the parties had agreed otherwise in their lease. Grand Acadian, Inc. v. United States, 87 Fed. Cl. 193, 216 (2009) (internal citation and quotation marks omitted). The diminution in fair market value of plaintiff's property as a result of the government's actions is therefore not a fact of consequence to the determination of this action. See Fed. R. Evid. 401.

Defendant is correct that "although the [c]ourt has ruled that Grand Acadian's restoration claims are not limited by the fair market value limitation of damages rule, it does not follow that the value of Grand Acadian's property is irrelevant for all purposes in this case." Def.'s Resp. 2. However, defendant has not identified a purpose for which evidence of fair market value is relevant. Defendant contends that "the fair market value of the property is directly relevant to the [g]overnment's fraud counterclaims." Def.'s Resp. 2. Defendant anticipates that defendant's expert arborist will testify at trial that the cost to replace the trees is "unreasonable" by several measures, including the fair market value of the property as a whole. Id. Defendant argues that Grand Acadian's certified

claim for the replacement of trees is "manifestly fraudulent, in part, because of the wide disparity between the value claimed by Grand Acadian for the trees and the fair market value of the entire property." Id. The court has determined, however, that under the terms of the lease, the government's liability is not limited to the diminution in fair market value of Grand Acadian's property. Grand Acadian, 87 Fed. Cl. at 216. Under the lease, Grand Acadian therefore has the right to pursue restoration claims greater than the fair market value of its property if those claims are otherwise proper. See id. Accordingly, whether Grand Acadian's claim for the replacement of trees is greater than the fair market value of Grand Acadian's property is not relevant to whether the claims were "manifestly fraudulent" or "unreasonable."[6]

B.      Plaintiff's Objections to Defendant's Exhibits

Plaintiff initially objected to defendant's exhibit (DX) 1 (GSA Pricing Negotiation Memo), see Def.'s List of Trial Exs., on several grounds, see Pl.'s Mot. 2-3. In plaintiff's Motion, plaintiff argued that DX 1 contains expert testimony that is improper if presented by a lay witness and untimely disclosed if presented by an expert witness. See Pl.'s Mot. 2-3. Plaintiff further argued that DX 1, if offered as evidence of the fair market value of Grand Acadian's property, is irrelevant and will cause confusion and delay. Id. at 2 (citing Fed. R. Evid. 401-03). Plaintiff contended that it will not be possible to authenticate DX 1 at trial because defendant had not disclosed the names of its authors. Id. at 3.

Defendant responds that DX 1 was authored by lay witnesses Mr. Waishes and Mr. Gordon and that "[e]ither one of them easily can authenticate DX 1" at trial. Def.'s Resp. 4. Defendant argues that DX 1 contains "the facts and estimates supporting the [g]overnment's decision to enter into the lease, not technical opinions developed for purposes of litigation." Id. Defendant argues that, to the extent that DX 1 contains

---

[6]Defendant also argues that "if the United States Court of Appeals for the Federal Circuit [(Federal Circuit)] were to conclude that the fair market value limitation of damages rule does apply to Grand Acadian's claims, it will promote judicial economy for the trial record to include our unrebutted evidence concerning the fair market value of Grand Acadian's property." Def.'s Resp. 3. It is the view of the court that hearing evidence of the fair market value of Grand Acadian's property will not promote judicial economy. If the Federal Circuit determines that damages are limited to the fair market value of plaintiff's property, Grand Acadian must be allowed an opportunity to provide evidence of the fair market value of its property--an issue not squarely before the court at the present time. Because such evidence is not relevant under the law of this case, see Grand Acadian, Inc. v. United States, 87 Fed. Cl. 193, 216 (2009), it would be inefficient to require Grand Acadian to present such evidence at the upcoming trial. Furthermore, if the Federal Circuit determines that the fair market value of plaintiff's property is relevant, the court finds that, in the circumstances of this case, it would promote judicial economy for the court to receive all evidence on the subject in a single hearing rather than two proceedings conducted months--or years--apart.

information concerning the value of Grand Acadian's property, it is "directly relevant to the [g]overnment's fraud counterclaims." Id. at 3.

In its reply, plaintiff repeats its contention that DX 1 is irrelevant to the extent that it is offered as evidence of the market value of Grand Acadian's property, Pl.'s Reply 4, but withdraws the other grounds of its objection to DX 1, id. at 4-5 ("[T]he only remaining issue is whether the [c]ourt will permit the [g]overnment to introduce and rely upon evidence of the fair market value of the property. . . . If such evidence is permitted, [Grand Acadian] concedes that its remaining objections are due to be overruled.").

Because the court has determined that evidence of the fair market value of Grand Acadian's property is not relevant under the law of the case, see supra Part II.A, plaintiff is correct that DX 1 is not admissible for this purpose.

Grand Acadian initially objected to DX 2 (Email from Fluor to FEMA regarding site restoration), Pl.'s Mot. 3, but later withdrew its objection, Pl.'s Reply 4.

C.      Plaintiff's Objection to Defendant's Deposition Designations

Plaintiff initially objected to defendant's designation of certain deposition testimony by Mr. Patrick McConnaughhay, Pl.'s Mot. 1, but later withdrew its objection, Pl.'s Reply 1.

D.      Defendant's Objection to Plaintiff's Undisclosed Expert Witnesses and the Documents They Authored

Defendant, in the first of its two motions in limine, alleges that "[i]n its pre-trial disclosures on July 29, 2011, Grand Acadian included five individuals on its witness list who have authored opinions based upon purported scientific, technical, or other specialized knowledge" as defined by Rule 702 of the Federal Rules of Evidence (Fed. R. Evid.). Def.'s Undisclosed Expert Mot. 1. The five witnesses are Mark Fontenot, Patricia Hatley, Ed Hudson, Bill Johnson and Trey Shanks. Id. Defendant contends that "Grand Acadian also included the reports of the opinions authored by these individuals on its exhibit list."[7] Id. Defendant initially requested that the court exclude trial

---

[7]Defendant lists the five witnesses and the documents they authored as follows:  "Mark Fontenot (PX 49, 356), Patricia Hatley (PX 109, 162, 381), Ed Hudson (PX 52, 433), Bill Johnson (PX 56), and Trey Shanks (PX 139)." Def.'s Mot. in Limine to Exclude Evidence Relating to Undisclosed Experts (Def.'s Undisclosed Expert Mot.), Dkt. No. 124, at 1.

Defendant refers to the documents drafted by the five witnesses as "opinions," see, e.g., id. at 1 (stating that "Grand Acadian included five individuals on its witness list who have authored opinions based upon purported scientific, technical, or other specialized knowledge"), and appears, at times, to analogize them to expert reports, see id. ("Grand Acadian also included reports of the opinions authored by these individuals on its exhibit list"); id. at 7 ("The [c]ourt

testimony by the five witnesses as well as the documents the witnesses drafted.  See id. at 1-2.

In the parties' second Joint Status Report, the parties state that they have agreed to the following compromise regarding the testimony of the five undisclosed witnesses:

> After the parties' discussions, plaintiff has withdrawn its opposition to defendant's motion to exclude:  (a) testimony by Patricia Hatley; (b) the written opinions by Ms. Hatley (PX 109, 162, 381); (c) testimony by Trey Shanks; (d) the written opinions by Mr. Shanks (PX 139); (e) testimony by Bill Johnson; (f) the written opinions by Mr. Johnson (PX 56); and (g) the written opinions by Mark Fontenot (PX 49, 356). In exchange, defendant has withdrawn its undisclosed expert objection with respect to:  (a) testimony by Ed Hudson; (b) the written opinions by Ed Hudson (PX 52, 433); and (c) testimony by Mark Fontenot.

JSR II, 2.

Because defendant has withdrawn its objection to the trial testimony of Mr. Hudson and Mr. Fontenot, see JSR II, 2, the testimony of Mr. Hudson and Mr. Fontenot is admissible at trial if it otherwise complies with the Federal Rules of Evidence. Because defendant has withdrawn its objection to the documents drafted by Mr. Hudson, see JSR II, 2, the documents drafted by Mr. Hudson are admissible at trial if they otherwise comply with the Federal Rules of Evidence.

Because plaintiff has "withdrawn its opposition to defendant's motion to exclude" the trial testimony of Ms. Hatley, Mr. Shanks and Mr. Johnson, see JSR II, 2, these three witnesses may not testify at trial.  Because plaintiff has "withdrawn its opposition to defendant's motion to exclude" the documents drafted by Ms. Hatley, Mr. Shanks, and Mr. Johnson, see JSR II, 2, these documents may not be presented at trial.

E.      Defendant's Objection to the Freese & Nichols Evidence

In its second of two motions in limine, defendant states that the government hired Freese & Nichols, Inc. (Freese & Nichols or F&N) "as a contractor in May 2006 to form

---

has previously concluded that expert reports are 'not admissible for the truth of the matters asserted therein." (citations and quotation marks omitted)).  Because the five witnesses have not been designated as expert witnesses in this case or in plaintiff's litigation with Fluor, Def.'s Reply to Pl.'s Resp. to Def.'s Mot. in Limine to Exclude Evidence Relating to Undisclosed Experts, Dkt. No. 137, at 1, and because the documents do not appear to have been prepared to satisfy the requirements of RCFC 26(a)(2) (governing the disclosure of expert testimony), see Def.'s Undisclosed Expert Mot., Ex. A-E (documents drafted by the five witnesses), the court refers to them as "documents."

opinions concerning Grand Acadian's initial demand of $2.8 million to settle its 'claim for damages.'" Def.'s Freese & Nichols Mot. 1. Plaintiff originally indicated its intention to introduce two of the reports drafted by Freese & Nichols, to which the court will refer as the May 2006 Report and the December 2006 Report. See id. Plaintiff proposes that the government, displeased by the conclusions of the May 2006 Report "found another engineer willing to oblige the [g]overnment's request" to draft a report that reached conclusions more favorable to the government. Pl.'s Freese & Nichols Resp. 3. According to plaintiff, the resulting document is the December 2006 Report, which purports to "supersede" the May 2006 Report. Id.

Defendant's Freese & Nichols Motion seeks to exclude the two reports and the depositions of Ms. Hatley and Mr. Shanks, two of the authors of the December 2006 Report, taken in plaintiff's action against Fluor. Def.'s Freese & Nichols Mot. 6-12. Defendant further objects to the anticipated trial testimony of Mr. Anthony Bosecker, the author of the May 2006 Report and a co-author of the December 2006 Report, whom plaintiff has identified as an expert witness.[8] Id. at 13-14.

Following the parties' meeting, plaintiff withdrew its opposition to defendant's motion in limine as it pertains to the December 2006 Report and to the deposition testimony of Ms. Hatley and Mr. Shanks. See JSR I, 2; see also Pl.'s Freese & Nichols Resp. 10 (agreeing that the December 2006 Report is irrelevant); Pl.'s Hatley Reply 2 (withdrawing the designation of Ms. Hatley's deposition testimony). Plaintiff continues to oppose defendant's motion in limine as it pertains to the May 2006 Report and the trial testimony of Mr. Bosecker. JSR I, 2.

     1.    The May 2006 Freese & Nichols Report

---

[8]The precise nature of Mr. Bosecker's involvement in the drafting of the December 2006 Report is not clear from the parties' briefing and the face of the report. The December 2006 Report is signed by Ms. Hatley and appears to be stamped with a seal identifying Ms. Hatley as an engineer certified by the state of Louisiana. Def.'s Freese & Nichols Mot., Ex. B (December 2006 Report), Dkt. No. 125-2, at B1. Plaintiff states that, although the December 2006 Report incorporated portions of the May 2006 Report, the December 2006 Report was prepared by Ms. Hatley and Mr. Shanks. Pl.'s Resp. in Opp'n to Def.'s Mot. in Limine to Exclude Evidence Relating to Freese & Nichols, Inc[.] (Pl.'s Freese & Nichols Resp.), Dkt. No. 132, at 3. Defendant states that "although Mr. Bosecker provided information for the December 2006 report, he did not sign or take responsibility for the December 2006 report because he is licensed only in Texas, not Louisiana, where Grand Acadian's property resides." Def.'s Freese & Nichols Mot. 14 (footnote omitted).

Defendant contends that the May 2006 Report is inadmissible to prove the truth of the matters asserted because it is hearsay.[9]  See Def.'s Freese & Nichols Mot. 6-8.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  "Hearsay is not admissible except as provided by [the Federal Rules of Evidence] or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress."  Fed. R. Evid. 802.  The court has previously sustained an objection that expert reports are inadmissible hearsay.  Westfed Holdings, Inc. v. United States, 55 Fed. Cl. 544, 569 (2003), rev'd in part on other grounds, 407 F.3d 1352 (Fed. Cir. 2005).

Plaintiff does not dispute that the statements contained in the May 2006 Report are out-of-court statements offered to prove the truth of the matters asserted.  See Pl.'s Freese & Nichols Resp. 5-6.  Plaintiff instead argues that "[t]he [g]overnment's motion in limine fails to consider that Bosecker can authenticate and confirm the content of [the May 2006 Report] . . . while testifying live at trial."  Id. at 5.  The nature of defendant's objection, however, is not that the May 2006 Report cannot be authenticated, but that the contents of the report are hearsay.  See Def.'s Freese & Nichols Mot. 6.  Plaintiff further argues that "[t]he [May 2006 Report] contains factual evidence in addition to expert opinion that will be part of Bosecker's live testimony.  Such evidence is not hearsay."  Pl.'s Freese & Nichols Resp. 5 (citing Fed. R. Evid. 801(c)).  In fact, the out-of-court statements contained in the May 2006 Report are precisely the type of evidence that the hearsay rule excludes.  See Fed. R. Evid. 801(c).  Plaintiff states that the May 2006 Report contains evidence of the soil conditions on plaintiff's property and of the cost of restoration.  Id. at 2.  These out-of-court statements, although "factual evidence," id. at 5, may not be offered in evidence to prove the truth of the matter asserted, see Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

Hearsay does not become admissible merely because the hearsay declarant testifies at trial.  The Federal Rules of Evidence state that certain out-of-court statements

---

[9]Defendant further argues that the reports are not admissible as expert testimony because they are unreliable for several reasons.  See Def.'s Freese & Nichols Mot. 8-11.  Additionally, defendant argues that the reports are irrelevant because they address the efforts that would be necessary to place the property in "developable" condition or in one of several hypothetical conditions rather than addressing the efforts that would be required to return the property to its condition at the beginning of the lease term.  Id. at 9-10.  The court agrees that the reports are inadmissible because they are hearsay not within any exception identified by plaintiff, and therefore does not reach defendant's additional arguments.  The court discusses whether the expert opinions of Mr. Bosecker, as reflected in the May 2006 Report, are relevant and reliable below.  See infra Part II.E.2.

made by a witness are "not hearsay." <u>See, e.g.</u>, Fed. R. Evid. 801(d)(1)(A) (discussing prior inconsistent statements by a witness while under oath at a trial, hearing or other proceeding, or in a deposition).  Plaintiff does not cite Rule 801 or argue that the statements contained in the May 2006 Report are of a type listed in Rule 801.  <u>See</u> Pl.'s Freese & Nichols Resp. 5-6.

Plaintiff argues that "[a]ssuming Bosecker was to refuse the opportunity to authenticate and confirm the information contained in the [May 2006 Report], said report would then constitute a prior inconsistent statement by the witness, which is also not hearsay." <u>Id.</u> at 5-6 (citing Fed. R. Evid. 801(d)(1)(A)).  Rule 801(d)(1)(A) provides, however, that a statement is not hearsay if the statement is "inconsistent with the declarant's testimony, <u>and</u> was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition."  Fed. R. Evid. 801(d)(1)(A) (emphasis added).  Plaintiff does not contend that the May 2006 Report contains statements "given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition."  <u>See</u> Pl.'s Freese & Nichols Resp. <u>passim</u>.  Therefore, contrary to plaintiff's contention that the statements in the May 2006 Report are "not hearsay," <u>id.</u> at 6, the statements are hearsay because they were not "given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition,"[10] Fed. R. Evid. 801(d).

Plaintiff then argues that the government, "through its commissioned Contracting Officer, Gerald Rottinghaus, admitted that it relied upon the Freese & Nichols [r]eports as an accurate account of the soil conditions in rendering his final decision, wherein he denied [Grand Acadian's] restoration claim."  Pl.'s Freese & Nichols Resp. 6.  Therefore, "[t]he [g]overnment has manifested an adoption and belief in [the] veracity of the [May 2006 Report], and as a result[,] said report could be received into evidence as a statement against interest, which again is not hearsay."  <u>Id.</u> (citing Fed. R. Evid. 801(d)(2)(B)).

---

[10]Plaintiff may be confusing the rule providing that a prior inconsistent statement is "not hearsay" if made under oath in another trial, hearing or other proceeding, or in a deposition, <u>see</u> Fed. R. Evid. 801(d)(1)(A), with the use of prior inconsistent statements to impeach the credibility of a witness, <u>see, e.g.</u>, <u>United States v. Hale</u>, 422 U.S. 171, 176 (1975) ("A basic rule of evidence provides that prior inconsistent statements may be used to impeach the credibility of a witness."); <u>United States v. Rodriguez-Berrios</u>, 573 F.3d 55, 69 (1st Cir. 2009) (quoting same). A prior inconsistent statement may be admissible for the purpose of impeachment although it is not admissible to prove the truth of the matter asserted.  <u>See, e.g.</u>, <u>United States v. Foster</u>, 476 F.3d 577, 591 (6th Cir. 2004) (finding that the district court did not abuse its discretion by allowing impeachment of a witness with a prior inconsistent statement although the prior statement was inadmissible, pursuant to Rule 404(b), as evidence of the defendant's "prior bad acts or character").

This argument appears to confuse two exceptions to the hearsay rule.[11]  Because plaintiff cites Rule 801(d)(2)(B) of the Federal Rules of Evidence, the court understands plaintiff to be referring to the exception for a statement that is "not hearsay" because it is construed as an admission by a party-opponent, who has "manifested an adoption or belief in its truth."  Fed. R. Evid. 801(d)(2)(B).  In the deposition testimony cited by plaintiff, the contracting officer agreed that he had read the Freese & Nichols reports while considering plaintiff's certified claims for restoration of plaintiff's property.  Pl.'s Freese & Nichols Resp., Ex. 3 (Rottinghaus Dep., Part I), Dkt. No. 132-3, at 65:19-22 (colloquy between Mr. Rottinghaus and plaintiff's counsel).  There is no indication in the deposition testimony, however, that the contracting officer "manifested an adoption or belief in [the May 2006 Report's] truth."  Fed. R. Evid. 801(d)(2)(B).  Instead, the contracting officer stated that he "considered all of the information that was provided,"[12] Rottinghaus Dep., Part I 64:2-3 (Rottinghaus), but did not state what conclusions he reached as a result of the reports, see id. passim.  In a portion of the Rottinghaus deposition not submitted by plaintiff, the contracting officer was more explicit, stating that the information provided by Freese & Nichols "was determined to be defective," Def.'s Freese & Nichols Reply, Ex. A (Rottinghaus Dep., Part II), Dkt. No. 138-1, at 96:8-10 (Rottinghaus) and that Freese & Nichols "came to conclusions that were not supported," id. at 96:14-15 (Rottinghaus).  The contracting officer did not manifest an adoption or belief in the truth of the May 2006 Report.

The court therefore concludes that the May 2006 Freese & Nichols Report is inadmissible because it is hearsay not within any exception identified by plaintiff.

2.      The Trial Testimony of Mr. Bosecker

---

[11]Plaintiff appears to be suggesting that "as a result" of the contracting officer's manifesting an adoption or belief in the truth of the May 2006 Report, the report is "a statement against interest, which again is not hearsay."  Pl.'s Freese & Nichols Resp. 6.  However, different exceptions to the hearsay rule apply to statements against interest by a declarant who is unavailable as a witness, see Fed. R. Evid. 804(b)(3), and admissions, by adoption of a statement, by a party-opponent, see Fed. R. Evid. 801(d)(2).

[12]Furthermore, plaintiff has suggested that the May 2006 Report and the December 2006 Report reached different conclusions.  See Pl.'s Freese & Nichols Resp. 3.  The contracting officer stated in his deposition testimony that he read two Freese & Nichols reports.  Pl.'s Freese & Nichols Resp., Ex. 3 (Rottinghaus Dep., Part I), Dkt. No. 132-3, at 65:19-66:4 (colloquy between Mr. Rottinghaus, plaintiff's counsel and defendant's counsel).  If the two Freese & Nichols reports read by the contracting officer were the May 2006 Report and the December 2006 Report, plaintiff does not explain how the contracting officer, by reviewing both reports, manifested an adoption or belief in the truth of only the May 2006 Report rather than manifesting an adoption or belief in the truth of the December 2006 Report, which reached different conclusions.  Plaintiff has withdrawn its opposition to defendant's objection to the December 2006 Report.  See supra Part II.E.1.

Defendant states that Grand Acadian "anticipates calling as an expert witness Mr. Bosecker, one of the F&N engineers who prepared the site analysis for the May and December 2006 reports." Def.'s Freese & Nichols Mot. 13. Defendant argues that, particularly with regard to the expert opinions reflected in the May 2006 Report,[13] "Mr. Bosecker's testimony is not admissible under Fed. R. Evid. 702 because it is irrelevant and unreliable." Id. For the reasons stated below, defendant is incorrect.

Rule 702 of the Federal Rules of Evidence provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The United States Supreme Court (Supreme Court) has described the trial court as a gatekeeper with the duty to "'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" Kumho Tire Co. v. Carmichael (Kumho), 526 U.S. 137, 141 (1999) (quoting Daubert v. Merrell Dow Pharms., 509 U.S. 579, 597 (1993)). In Daubert, the Supreme Court established a two-prong test for the admissibility of expert evidence: the trial court must determine if the expert's testimony "both rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597.

Defendant first argues that "Mr. Bosecker's testimony concerning cost estimates is irrelevant because F&N's cost analysis was directed toward the cost of bringing the property from the property's then-present condition as of October 18, 2006, to development of the property as an RV park." Def.'s Freese & Nichols Mot. 13. Defendant further contends that "Mr. Bosecker did not analyze the costs of restoring the property to its original condition, which the [c]ourt ruled was the appropriate analysis in its ruling upon our motion for summary judgment." Id.; see also Grand Acadian, 87 Fed. Cl. at 217 ("The issues remaining for trial include the condition of the [p]roperty at both the commencement of the [l]ease and at the termination of the [l]ease, and, if restoration is required, the cost to restore the [p]roperty to its pre-[l]ease condition, 'normal wear excepted.'"). Defendant does not quote the portion of Rule 702 that defendant believes

_____

[13]Because the parties examine the May 2006 Report and the December 2006 Report to determine the analysis and conclusions Mr. Bosecker will present at trial, see, e.g., Pl.'s Freese & Nichols Resp. 7 (citing the May 2006 Report); Def.'s Freese & Nichols Mot. 13 (citing the May 2006 Report), the court also examines the opinions reflected in the reports, notwithstanding that neither report is admissible at trial, see supra Part II.E.

12

bars irrelevant expert testimony, but because defendant uses the term "irrelevant," <u>see</u> Def.'s Freese & Nichols Mot. 13, the court understands defendant's argument to be that Mr. Bosecker's expert testimony will address the cost to restore the property to a condition other than its pre-lease condition and therefore will not "assist the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702.  In the words of the Supreme Court in <u>Daubert</u>, the court understands defendant's argument to be that Mr. Bosecker's analysis is not "relevant to the task at hand." <u>Daubert</u>, 509 U.S. at 597.

Defendant's argument is contradicted by a number of Mr. Bosecker's statements in the May 2006 Report.  <u>See, e.g.</u>, Def.'s Freese & Nichols Mot., Ex. A (May 2006 Report), Dkt. No. 125-1, at A4 ("Following is FNI's opinion of the probably construction costs to . . . restore the property to its <u>developable</u> condition prior to FEMA site activities." (emphasis in original)); <u>id.</u> at A6 (listing potential sources of information on site conditions, including "USDA-NRCS soils map data" and "[e]nvironmental documentation that FEMA may have prepared for the site work."); <u>id.</u> at A3 ("It is Freese and Nichols, Inc. opinion that the current site soil conditions are as a result of FEMA's activities and not as a result of conditions prior to FEMA involvement on the subject property."); <u>id.</u> at A3 ([I]t is our opinion that the site in its original condition was in a suitable condition for use as an RV Park if normal earthwork operations would have been taken."); <u>id.</u> at A6 (stating that environmental scientists and an engineer would visit the site to determine, among other things, "Actions necessary to return the site to its pre-development condition."); <u>id.</u> at A26 (describing the procedures that would be required "[i]n order to restore the site so that development procedures and costs will be similar to what they would have been if no contract had been made").  The court therefore concludes that Mr. Bosecker's expert testimony is "relevant to the task at hand," <u>Daubert</u>, 509 U.S. at 597, and that will assist the court to understand the evidence or to determine a fact in issue,[14] <u>see</u> Fed. R. Evid. 702.

Defendant then argues that Mr. Bosecker's expert testimony "would not assist the trier of fact under Fed. R. Evid. 702 because it is unreliable."  Def.'s Freese & Nichols Mot. 13 (citing <u>Kumho</u>, 526 U.S. at 148).  Citing Mr. Bosecker's deposition testimony, defendant contends that Mr. Bosecker's analysis is unreliable because Mr. Bosecker admits that he did not determine to a "reasonable degree of certainty" the site conditions

---

[14]Because defendant cites Rule 702 rather than the rules governing relevancy, <u>see</u> Def.'s Mot. 13-14, the court does not understand the basis of defendant's objection to be that Mr. Bosecker's testimony is inadmissible because it is irrelevant.  However, the court notes that, because Mr. Bosecker's testimony addresses the procedures and costs necessary to restore the property to its pre-lease condition--an issue central to this case--it is also relevant.  <u>See</u> Fed. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

at the beginning of the lease term.  Id. at 9, 14 (citation omitted).  The authors of the
December 2006 Report concluded that "it is not possible based on available information
for FNI to determine the original site conditions, specifically with regards to the
occurrence of significant soil mixing, with a reasonable degree of certainty."  Def.'s
Freese & Nichols Mot., Ex. B (December 2006 Report), Dkt. No. 125-2, at B28.  Asked
by defendant's counsel, "Do you stand by that statement," Mr. Bosecker answered,
"Yes."  Def.'s Freese & Nichols Mot., Ex. D (Bosecker Dep.), Dkt. No. 125-4, at 29:11-
12 (colloquy between Mr. Bosecker and defendant's counsel).

       The court is not persuaded, however, that the aspects of Mr. Bosecker's analysis
on which defendant's criticism focuses render Mr. Bosecker's testimony unreliable.  At
his deposition, Mr. Bosecker was presented with photographs of the property, taken on
December 29, 2005, that were unavailable to him when he worked on the May 2006
Report.  Bosecker Dep. 26:16-20 (colloquy between Mr. Bosecker and defendant's
counsel).  The photographs of the property then available to Mr. Bosecker were taken
before the beginning of the lease term--in early October, 2005.  See id. at 21:4-9
(colloquy between Mr. Bosecker and defendant's counsel).  Mr. Bosecker did not state
how the photos would have changed his analysis.  See id. at 29-30 (colloquy between Mr.
Bosecker and defendant's counsel).  Mr. Bosecker indicated that the photos show "more
debris there than we originally thought."  Id. at 27:21-22 (Bosecker).  However, when
asked by defendant's counsel whether the December, 2005 photographs would "have had
a significant impact on your opinions," Mr. Bosecker stated, without elaboration, "It
certainly would have helped."  Id. at 28:14-17 (colloquy between Mr. Bosecker and
defendant's counsel).  In response to a question from defendant's counsel, Mr. Bosecker
also stated that he was unable to determine from the photographs the amount of soil
mixing that had taken place.  Id. at 33:20-23 (Bosecker).

       The May 2006 Report states that removal of debris resting on the surface of the
property is relatively inexpensive.  The report states that the cost to "[r]ake [the] site of
woody debris and burn on-site," combined with the cost to perform "[r]ough grading,
compaction, and seeding," would be $785,000, which is less than fifteen percent of the
total estimated restoration cost.  May 2006 Report A27.  Defendant does not explain how
the presence of the additional debris that appears in the December 2005 photographs
would have materially changed the amount of this estimate or the total restoration cost
estimated by Mr. Bosecker.  See Def.'s Freese & Nichols Mot. 13-14.  The court
therefore concludes that Mr. Bosecker's use of photographs from early October 2005
rather than December 29, 2005 while preparing the May 2006 Report does not render his
analysis unreliable for failure to base his analysis "upon sufficient facts or data."  See
Fed. R. Evid. 702.

       Defendant cites a portion of Mr. Bosecker's deposition in which Mr. Bosecker
agreed with defendant's counsel that he had not seen "any evidence" of the extent to
which organic matter was mixed into the soil on the property before the lease term began.

Def.'s Freese & Nichols Mot. 14 (citing Bosecker Dep. 35:23-36:7 (colloquy between Mr. Bosecker and defendant's counsel)).  Mr. Bosecker stated that he relied on a soil boring report developed by another firm to determine soil conditions before the lease started, but that he had not seen the soil borings himself.  Bosecker Dep. 35:15-17 (colloquy between Mr. Bosecker and defendant's counsel).  Mr. Bosecker stated that the soil boring report did not address the amount of organic material in the soil.  Id. at 35:21-22 (Bosecker).

Mr. Bosecker's statement that he had not seen any evidence of the amount of organic material mixed into the soil is contradicted by his statements in the May 2006 Report and at his deposition.  In the May 2006 Report, Mr. Bosecker wrote that "the site in its original condition was in a suitable condition for use as an RV [p]ark if normal earthwork operations would have been taken."  May 2006 Report A23.  Mr. Bosecker described "normal earthwork operations" as clearing and grubbing the land; stripping the vegetation, topsoil, and organic material to a depth of at least nine inches; and stabilizing any areas that were to be paved.  Id.

Mr. Bosecker stated that, during his site visit, he observed the portion of Grand Acadian's property that Grand Acadian had developed into an RV park rather than leasing it to the government.  Id.  Mr. Bosecker noted that Grand Acadian appeared to have developed its portion of the property using the type of "normal earthwork operations" he described.  Id.  At his deposition, Mr. Bosecker agreed that he would have wanted to know whether Grand Acadian also stripped the organic materials from the soil before performing its construction so he could determine whether he was properly using the portion of the property not leased to the government as a reference point.  Bosecker Dep. 39:16-40:2 (colloquy between Mr. Bosecker and defense counsel).  Neither the deposition nor the May 2006 Report makes clear whether or not Mr. Bosecker learned whether or not, or to what extent, Grand Acadian had stripped organic materials from the soil before performing construction of its adjacent RV park.

Finally, defendant argues that the cost analysis reflected in the May 2006 Report is unreliable because the May 2006 Report was superseded by the December 2006 Report.  Def.'s Freese & Nichols Mot. 8.  Defendant contends that the December 2006 Report contained additional analysis of the property and analyzed the additional remediation work performed by the government after the May 2006 Report was written.  Id.  It is the view of the court that Mr. Bosecker's analysis is not unreliable merely because it was "superseded" by a later analysis containing revised cost estimates or because the government performed additional remediation of the property.  These issues concern the amount of weight to be accorded to Mr. Bosecker's testimony and whether his conclusions in the May 2006 Report are affected by the government's subsequent remediation efforts or by evidence that came to light after Mr. Bosecker developed his

analysis.  They are issues best addressed by Mr. Bosecker's examination--and cross-examination--at trial.[15]

III.    Conclusion

Plaintiff's objection to testimony by Mr. Foti, Mr. Gordon and Mr. Waishes on the value of plaintiff's property is SUSTAINED.

---

[15]Defendant contends that "[t]he $6 million cost estimate in the [May 2006 Report], although described as dealing with 'original site conditions,' includes steps necessary for preparation of the property for development as an RV park, including clearing of trees and vegetation, stripping of vegetation, topsoil, and organic material, and placing compacted structural fill."  Def.'s Freese & Nichols Reply 5 (footnote omitted).  The text referenced by defendant does not support this proposition.

One page of the May 2006 Report mentions "'earthwork operations.'"  Id. n.13 (quoting May 2006 Report A23).  The referenced page does not state that these earthwork operations should be undertaken during restoration of the site, but rather that "the site in its original condition was in a suitable condition for use as an RV [p]ark if normal earthwork operations would have been taken."  May 2006 Report A23.  One page of the May 2006 Report mentions "'compacted fill.'"  Def.'s Freese & Nichols Reply 5 n.13 (quoting May 2006 Report A26).  The referenced page, however, lists the measures that would be necessary "to restore the site so that development procedures and costs will be similar to what they would have been if no contract had been made."  May 2006 Report A26.  The report states that compacted fill of a particular type must be used "[i]n order to provide pavement support equivalent to or better than the original soils."  Id.  Defendant notes that another page of the report refers to the "placement of new fill."  Def.'s Freese & Nichols Reply 5 n.13 (quoting Def.'s Freese & Nichols Mot., Ex. A (May 2006 Report), Dkt. No. 125-1, at A27) (quotation marks omitted).  However, the previous page of the report states that fill should be placed to replace the mixed soils that had been rendered unsuitable for construction.  May 2006 Report A26.  Notably, the report called for a quantity of fill material sufficient to replace all but nine inches of the affected soil because Grand Acadian would have been required to replace the top nine inches of soil to support development, even "if no contract had been made."  Id.; see also id. at A23 (stating that, before the lease term began, the site was in suitable condition for development as an RV park if "normal earthwork operations," including the stripping of at least nine inches of "vegetation, topsoil, and organic material," were undertaken).

In his deposition, Mr. Bosecker testified that proper restoration of the property would render some of the normal earthwork operations he had described unnecessary:  "Typically[,] these are done more in stages, as far as the clearing and grubbing and the stripping, but the fact that everything was mixed up, all that would be just hauled off."  Def.'s Freese & Nichols Mot., Ex. D (Bosecker Dep.), Dkt. No. 125-4, at 33:12-15 (Bosecker).  The court has determined, and it is the law of the case, that "[t]he government is not relieved from its obligation to repair damage it caused during the [l]ease term by the fact that repairs required by the [l]ease may leave the [p]roperty in a better condition than the government would otherwise be obligated to leave it."  Grand Acadian, Inc. v. United States, 97 Fed. Cl. 493, 500 (2011).

Plaintiff's objection to the introduction of DX 1 (GSA Pricing Negotiation Memo) into evidence is SUSTAINED.  Plaintiff's objection to the introduction of DX 2 (Email from Fluor to FEMA regarding site restoration) into evidence is MOOT because plaintiff withdrew the objection.

Plaintiff's objection to defendant's deposition designations is MOOT because plaintiff withdrew the objection.

Defendant's objection to the trial testimony of Mr. Hudson Fontenot and to the documents drafted by Mr. Hudson and Mr. Fontenot is MOOT because defendant withdrew the objection.  Defendant's objection to the testimony of Ms. Hatley, Mr. Shanks and Mr. Johnson, and to the documents drafted by Ms. Hatley, Mr. Shanks and Mr. Johnson, is SUSTAINED.

Defendant's objection to introduction of the May 2006 and December 2006 Freese & Nichols Reports into evidence to prove the truth of the matter asserted is SUSTAINED.  Defendant's objection to the introduction of the deposition testimony of Ms. Hatley and Mr. Shanks into evidence is SUSTAINED.  Defendant's objection to the trial testimony of Mr. Bosecker is OVERRULED.

The following uncontested motions are GRANTED:  Defendant's Consent Motion to Introduce Deposition Testimony of Plaintiff's President and Corporate Designee; Defendant's Consent Motion for Leave to Serve Subpoenas Upon Witnesses Who Reside More than 100 Miles from the Place of Trial; and Grand's Motion for Leave to Serve Subpoena[s] Upon Witnesses Who Reside More than 100 Miles from the Place of Trial.

Defendant's Consent Motion for the Court to Hear Live Trial Testimony of One Witness Out of Time is GRANTED.  The record shall remain open at the conclusion of the trial for the sole purpose of admitting the live testimony of Ms. Heather Berg.  The testimony of Ms. Berg will be heard in Washington, D.C. as soon as practicable after she returns to the United States.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Chief Judge